# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| **DARRELL CRAIG ADAMS** | § | |
| | § | |
| **V.** | § | A-18-CV-429-LY |
| | § | |
| **LORIE DAVIS** | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

The Magistrate Judge submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. §636(b) and Rule 1(e) of Appendix C of the Local Court Rules. Before the Court are Petitioner's Application for Habeas Corpus Relief under 28 U.S.C. § 2254 (Document 1), Respondent's Answer (Document 14), and Petitioner's response (Documents 18, 20). Petitioner, proceeding pro se, has paid the filing fee for this case. For the reasons set forth below, the undersigned finds that Petitioner's application for writ of habeas corpus should be dismissed.

## I. STATEMENT OF THE CASE

### A. Petitioner's Criminal History

According to Respondent, the Director has custody of Petitioner pursuant to a judgment and sentence of the 21st Judicial District Court of Burleson County, Texas. Petitioner was convicted of burglary of a habitation with two prior felony convictions alleged for enhancement of punishment. Petitioner was sentenced to 95 years' imprisonment on April 13, 2015. The Seventh Court of Appeals of Texas affirmed Petitioner's conviction on April 15, 2016. Adams v. State, No. 07-15-00360-CR, 2016 WL 1578760 (Tex. App.–Austin 2016, no pet.). Despite being granted an extension of time to file a petition for discretionary review, Petitioner did not do so. He did,

however, file two state applications for habeas corpus relief. Petitioner filed his first state application on May 24, 2017. The Texas Court of Criminal Appeals denied it without written order on September 20, 2017. Ex parte Adams, Appl. No. 61,121-03. Petitioner filed his second state application on February 12, 2018. The Texas Court of Criminal Appeals dismissed it as successive on May 2, 2018. Ex parte Adams, Appl. No. 61,121-04.

**B.      Factual Background**

The factual background of this case is found in the Court of Appeals' opinion and is repeated below.

> On November 6, 2013, Jimmy Charanza left his home in rural Burleson County to attend a funeral. When he arrived back at home around 2:00-2:30 in the afternoon, he found that his home had been broken into. According to Charanza, the items taken in the burglary were a gun safe and four guns, a gold retirement watch with his name inscribed on the back, another watch, two pool cues, and some country and western CDs and memorabilia.
>
> The Burleson County Sheriff's Office investigated the burglary. The lead investigator was Gene Hermes. Hermes received a call from Roger Alexander on November 12, 2013. Alexander relayed to Hermes that the burglary was committed by himself, Josh Hall, and appellant. According to Alexander, Hall entered the home and dragged a gun safe out to the front porch. The safe was then loaded onto a pickup truck that had been borrowed from Rick Conrad. According to Alexander's testimony, the gun safe was taken back to appellant's house. After going back to appellant's house, appellant made a phone call to Walter White in an effort to secure a cutting torch to open the gun safe. When White advised that he did not have a cutting torch, appellant opened the gun safe with a hammer and a crow-bar. Four guns, two watches, pool cues, and some country and western CDs and memorabilia were found inside the safe. A day or so following the burglary, the guns were sold to J.D. Trout. However, according to Alexander, appellant wanted to keep the gold watches, pool cues, and country and western memorabilia and CDs.
>
> Based upon getting this information from Alexander, Hermes obtained a search warrant to search appellant's home. Upon executing the search warrant, the Burleson Sheriff's Office personnel located the engraved gold watch, two pool cues, and a Willie Nelson CD. At trial, Charanza positively identified the gold watch and one of

2

the pool cues. Although he was less certain in his identification of the CD, he testified that it appeared to be one of the CDs he kept in the gun safe.

At the time of the search of appellant's home, officers found several prescription bottles in appellant's name, a utility bill in appellant's name, appellant's vehicle parked at the home, and all of appellant's dogs along with their food.

Hermes executed a second search warrant on the home of J.D. Trout. All four of the firearms taken from the burglary were found there.

Appellant gave several statements to the authorities and, in each, he denied participating in any burglary. Initially, he stated he did not even know Charanza. However, later he admitted he might have met him. Likewise, he initially denied ever being in a pickup truck with Alexander and Hall on the day of the burglary. In a later statement, he revised this and said that the two men had picked him up while he was walking to get gas for his truck.

At the time of his initial statement, appellant voluntarily gave buccal swab samples of his saliva. These samples, along with the gold retirement watch, were sent to the Department of Public Safety (DPS) laboratory in Austin for DNA testing. The result of the testing was that multiple sources of DNA were identified on the watch. Robert Meade of the DPS laboratory testified that he could not say with 100% certainty that appellant had handled the gold watch, however, he was not excluded from the individuals who handled the watch.

At trial, appellant presented the testimony of Diane Conrad. She testified that, sometime around the incident in question, appellant had sold his home and was staying with her and her husband occasionally. On direct examination, Conrad testified that appellant "stayed in the house a little bit, not much because he had his four dogs and those were like his children." The testimony revealed that, some of the time, appellant stayed in a chicken coop out back of the Conrad home. Conrad further testified that, at times, appellant also stayed at his house.

Appellant then presented the testimony of Kelli Cox of Wal-Mart who testified about records showing that prescription drugs had been sold to appellant on the day of the burglary, November 6, 2013. All of the prescriptions were picked up at 3:30 on that day. On cross-examination, Cox admitted that the receipts simply show that appellant or his designee picked up the prescriptions.

Vanessa Dailey then testified for appellant. Her testimony was related to a visit to a physician that appellant made on the day of the burglary. According to the records of Dailey's employer, HealthPoint, appellant began giving his history to a nurse at 1:57 p.m. on the 6th of November, 2013.

At the conclusion of the evidence, the trial court submitted its charge to the jury. The court's charge contained a paragraph concerning the law of parties and another paragraph identifying Alexander as an accomplice witness as a matter of law. The charge then had the appropriate requirement of corroboration for the jury to use the accomplice testimony to convict.

The jury subsequently found appellant guilty of burglary of a habitation. After receiving the punishment testimony, the jury found that appellant had been previously convicted of two prior felony offenses and sentenced him to confinement in the ID-TDCJ for 95 years.

Adams v. State, No. 07-15-00360-CR, 2016 WL 1578760, at *1-2 (Tex. App. – Amarillo 2016, no pet.).

### C. Petitioner's Grounds for Relief

Petitioner raises the following grounds for relief:

1. The evidence was legally insufficient;

2. The jury charge directed a verdict by applying the law presented in the indictment instead of the facts according to the evidence presented at trial; and

3. He was denied the effective assistance of trial and appellate counsel.

## II. DISCUSSION AND ANALYSIS

### A. Statute of Limitations

Federal law establishes a one-year statute of limitations for state inmates seeking federal habeas corpus relief. See 28 U.S.C. § 2244(d). That section provides, in relevant part:

(d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of–

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

4

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

**B.  Application**

Petitioner's conviction became final, at the latest, on July 15, 2016, at the conclusion of time during which he could have filed a petition for discretionary review with the Texas Court of Criminal Appeals. Gonzalez v. Thaler, 623 F.3d 222 (5th Cir. 2010) (holding a conviction becomes final when the time for seeking further direct review in the state court expires). At the time Petitioner filed his first state application for habeas corpus relief on May 24, 2017, only 52 days remained of the one-year limitations period. The Texas Court of Criminal Appeals denied Petitioner's state application on September 20, 2017. Therefore, Petitioner had until Monday, November 13, 2017, to timely file his federal application. Petitioner did not execute his federal application until May 14, 2018, after the limitations period had expired.

Petitioner's second state application, filed February 12, 2018, did not operate to toll the limitations period, because it was also filed after the limitations period had already expired. See Scott v. Johnson, 227 F.3d 260, 263 (5th Cir. 2000) (state application for habeas corpus relief filed after limitations period expired does not toll the limitations period).

Petitioner contends the untimeliness of his application should be excused, because he is actually innocent. In McQuiggin v. Perkins, 133 S. Ct. 1924 (2013), the Supreme Court held a prisoner filing a first-time federal habeas petition could overcome the one-year statute of limitations in § 2244(d)(1) upon a showing of "actual innocence" under the standard in Schlup v. Delo, 513 U.S. 298, 329 (1995). A habeas petitioner who seeks to surmount a procedural default through a showing of "actual innocence," must support his allegations with "new, reliable evidence" that was not presented at trial and must show it was more likely than not that, in light of the new evidence, no juror, acting reasonably, would have voted to find the petitioner guilty beyond a reasonable doubt. See Schlup, 513 U.S. at 326–27 (1995); see also House v. Bell, 547 U.S. 518 (2006) (discussing at length the evidence presented by the petitioner in support of an actual-innocence exception to the doctrine of procedural default under Schlup). "Actual innocence" in this context refers to factual innocence and not mere legal sufficiency. Bousely v. United States, 523 U.S. 614, 623–624 (1998).

Petitioner points the Court to his brother's affidavit, who was not called as a witness at trial. The affidavit states Petitioner spent the night at his brother's house in Cosby, Texas on November 5, 2013. The brother states Petitioner left between 10 a.m. and 10:30 a.m. on November 6, 2013. He estimates the drive from Cosby, Texas to Caldwell, Texas in Burleson County is 2½ to 3 hours. Petitioner's brother stated an investigator spoke to him in January 2015 and he told the investigator he would be willing to testify at Petitioner's trial. According to Petitioner's brother, Petitioner's counsel told him that counsel had decided not to call him as a witness.

The Fifth Circuit Court of Appeals recently held evidence does not qualify as "new" if the evidence was "'always within the reach of [the petitioner's] personal knowledge or reasonable investigation.'" Hancock v. Davis, 906 F.3d 387, 390 (5th Cir. 2018), petition for cert. filed, \_\_\_

U.S.L.W. ___ (U.S. Jan. 18, 2019) (No. 18-940) (quoting Moore v. Quarterman, 534 F.3d 454, 465 (2008)). The record indicates Petitioner's alibi was within Petitioner's personal knowledge at the time of the trial and, therefore, the purported alibi does not constitute newly discovered or newly available evidence. Moreover, Petitioner does not contend he could not have obtained his brother's affidavit earlier. Rather, Petitioner's brother admits he provided an alibi for his brother when Petitioner's investigator interviewed him prior to trial. Counsel apparently did not find Petitioner's brother's account credible. In light of the other evidence of guilt, Petitioner has not established that, even with his brother's attestations as presented in the affidavit, no juror would have found him guilty. Accordingly, Petitioner has not established a credible claim of actual innocence to excuse the untimeliness of his federal application for habeas corpus relief.

Petitioner also has alleged no facts showing any equitable basis exists for excusing his failure to timely file his federal habeas corpus application. See Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005) ("a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."). In addition, the record does not reflect that any unconstitutional state action impeded Petitioner from filing for federal habeas corpus relief prior to the end of the limitations period. Furthermore, Petitioner has not shown that he did not know the factual predicate of his claims earlier. Finally, the claims do not concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review.

### III. RECOMMENDATION

It is recommended that Petitioner's application for writ of habeas corpus be dismissed with prejudice as time-barred.

## IV. CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, effective December 1, 2009, the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in Slack v. McDaniel, 529 U.S. 473, 484 (2000). In cases where a district court rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id.

In this case, reasonable jurists could not debate the dismissal of the Petitioner's section 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. Miller-El v. Cockrell, 537 U.S. 322, 327 (2003) (citing Slack, 529 U.S. at 484). Accordingly, it is respectfully recommended that the Court shall not issue a certificate of appealability.

## V. OBJECTIONS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. Battles v. United States Parole Comm'n, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140, 150-153 (1985); Douglass v. United Servs. Auto. Assoc., 79 F.3d 1415 (5th Cir. 1996)(en banc).

SIGNED this 20th day of February, 2019.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE